# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD ROQUE | : | PRISONER |
| | : | NO. 3:02CV1808(JCH) |
| VS. | : | |
| | : | |
| | : | |
| COMMISSIONER JOHN ARMSTRONG, ET AL. | : | SEPTEMBER 24, 2004 |

### THE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
### OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), the defendants move for summary judgment against the plaintiff's amended complaint ("complaint") dated March 2, 2004. The plaintiff alleges in his complaint, that the defendants have been indifferent to his medical needs in violation of his rights secured by 42 U.S.C. § 1983 and that the defendants have violated his rights pursuant to the Rehabilitation Act, 29 U.S.C. § 701 et seq. and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

The defendants assert that there are no material issues fact in dispute concerning the following:

1. They defendants have no personal involvement with the provision of medical care and therefore are not proper parties to a 42 U.S.C. § 1983 action.

2. With respect to the Americans with Disabilities Act and the Rehabilitation Act, the individual defendants are immune from suit in their individual capacity.

3. The plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act and may not proceed on this action in federal court.

I.    **FACTS**[1]

    A.    **Introduction**

The plaintiff was at all times relevant to this complaint an inmate confined to the custody of the Connecticut Department of Correction ("DOC").  The defendants in this action are the State of Connecticut, former DOC Commissioner John Armstrong, former Warden of Cheshire Correctional Institution ("CCI") Hector Rodriquez, Unit Manager Hannah (called "Hanna" in the complaint), Captain Knight, Correctional Treatment Officer Bailey, Officer Sanders, Officer Gethers, and Officer Ahmed (called "Hamed" in the complaint).

None of the individual defendants is a health professional.  (Knight Aff.)  Responsibility for the treatment of medical issues does not rest with custodial staff, such as the named defendants, but on medical staff.  (Id.)  In addition, as the complaint makes clear, there is no allegation that any of the defendants interfered with the plaintiff's access to medical care.

The plaintiff began his most recent incarceration with the DOC on December 13, 2001. The plaintiff arrived at Cheshire on April 24, 2002.  (Pl.'s Movement Sheet).

The plaintiff remained at Cheshire until September 25, 2003, at which time he was transferred to the Corrigan Correctional Institution ("Corrigan").

---

[1]    This memorandum of law refers to the following documents: (1) The plaintiff's movement sheet ("Pl.'s Movement Sheet") attached as Exhibit A; (2) Affidavit of Charles Knight ("Knight Aff.") attached as Exhibit B; (3) Affidavit of Paul DeFelice  ("DeFelice Aff.") attached as Exhibit C; (4) Affidavit of Virginia Turner ("Turner Aff.") attached as Exhibit D; (5) Administrative Directive 9.6, effective January 29, 2002, attached as Exhibit E; (6) Administrative Directive 9.6, effective March 5, 2003, attached as Exhibit F; and (7) the plaintiff's amended complaint ("complaint").

The plaintiff has been confined to the Willard-Cybulski Correctional Institution ("Willard-Cybulski") since June 1, 2004.  (Pl.'s Movement Sheet.)

### B.  **Grievances**

As will be detailed below, the DOC has a grievance procedure by which inmates may request that issues related to their confinement and medical treatment be addressed by DOC staff.  While confined at Cheshire, the plaintiff did not file any grievances concerning any alleged failure of the defendants to accommodate a disability.  (DeFelice Aff.)

Since the start of the plaintiff's confinement at Willard-Cybulski, the plaintiff has not filed any grievances concerning his medical treatment.  (Turner Aff.)

## II.   **STANDARD OF REVIEW**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Federal Rule of Civil Procedure 56(c).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).  The party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of

his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."

Fed. R. Civ. P. 56(e).

### III.     THE PRISON LITIGATION REFORM ACT

The plaintiff's claims concerning in this case are subject to the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until . . . administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The intended purpose of the PLRA was to limit frivolous prisoner suits, which comprise a disproportionate percentage of all cases filed in the District Courts of the United States. See 141 Cong. Rec. § 7498-01, 7526 (daily ed. May 25, 1995) (comments of Senator Kyle).

The PLRA's exhaustion requirement applies without exception "to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 983, 992 (2002). Exhaustion of administrative remedies is required regardless of whether the precise relief desired by the plaintiff is available in the administrative context, or whether participation in the administrative process might for some reason be deemed futile. Booth v. Churner, 532 U.S. 73, 74 n.6 (2001). The PLRA requires that the inmate exhaust all available administrative remedies, including appeals.

The Connecticut Department of Correction's Administrative Directive 9.6 ("Administrative Directive" or "A.D.") provides an administrative procedure under which

prisoners may seek redress of grievances.  <u>See</u> Administrative Directive 9.6    The version of Administrative Directive 9.6 that was in effect at the time of the plaintiff's confinement at Cheshire provided that the following matters are grievable:

    1.    The interpretation and application of policies, rules and procedures of the unit, division and Department.

    2.    The existence or substance of policies, rules and procedures of the unit, division and Department in accordance with Section 13 below.

    3.    Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.

    4.    Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.

    5.    Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to <u>include rights under the Americans with Disabilities Act</u>, except as noted herein.

    6.    Property loss or damage.

Administrative Directive 9.6(6)(A) (emphasis added).

The Administrative Directive provides for a system of administrative review.  Inmates must file their Level 1 grievances within 30 days of the occurrence or discovery of the cause of the grievance.  See A.D. § 10.  A response must be issued within 30 days, and the failure to issue a timely response to the Level 1 grievance permits the inmate to take an automatic appeal to Level 2.  <u>Id</u>. at § 16.  Denial of, or failure to timely respond to, a Level 2 grievance may, under certain circumstances, be appealed to Level 3.  <u>Id</u>. at § (17).

The current Administrative Directive 9.6. states as follows concerning medical treatment:

C.      Treatment and Diagnosis Review.  If an inmate wishes to appeal a medical diagnosis or prescribed treatment, the inmate shall request a Physician Sick Call Appointment at no cost to the inmate.  This appointment will provide the inmate an opportunity to discuss the issue with the physician.  The contents of this meeting, to include the final decision on diagnosis and/or treatment, shall be explicitly documented in the inmate's medical file.  Only one appeal per diagnosis and/or treatment shall be permitted.

As will be shown below, the plaintiff has failed to file grievances concerning matters that are the subject of this lawsuit, much less exhaust his grievance rights.

## IV.    MEDICAL CLAIMS

The plaintiff alleges that the defendants have "denied" and "refused" necessary medical and mental health care.  (Complaint, ¶ 12.)  The plaintiff claims that his ailments include multiple problems such as arthritis, shoulder injury, gout, kidney problems, depression, hallucination and anxiety.  (Id., ¶ 13.)

To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 291 (1976).  Mere negligence will not support a Section 1983 claim.  The conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 203, 232 (S.D.N.Y. 1988 ) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970).  A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind."  Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, supra, 37 F.3d at 66 (quoting Nance v. Kelley, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). See, e.g., Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1998) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instructions), cert. denied, 401 U.S. 983 (1971). Not all medical conditions, however, are considered "serious." See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988) (kidney stones); Malsh v. Austin, 901 F. Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); May v. Baldwin, 895 F. Supp. 1398 (D.Or. 1995) (dry skin); Glasper v. Wilson, 559 F. Supp. 12 (W.D.N.Y. 1982) (bowel problems).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Chance, supra, 143

F.3d at 702. "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

### A.    Official Capacity Suits are Barred by the Eleventh Amendment

The plaintiff has sued both the State of Connecticut and John Armstrong in his official capacity based on the failure of DOC medical personnel and the University of Connecticut for failure to diagnose and treat his alleged medical conditions. It is well-established that the eleventh amendment bars lawsuits against the State for monetary damages. Since an action against former Commissioner Armstrong in his official capacity is in effect a suit against the State, it is also barred.

### B.    The Plaintiff Cannot Demonstrate Personal Involvement by the State Officials in his Medical Treatment

The plaintiff raises numerous allegations in his complaint of failure to properly diagnose and treat his alleged medical conditions. Personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages under 42 U.S.C. § 1983. Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989); Williams v. Smith, 781 F.2d 319 (2d Cir. 1986); Ayers vs. Coughlin, 780 F.2d 205 (2d Cir. 1985); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977); cert. denied, 434 U.S. 1087 (1978). However, the individual defendants are not medical professionals. Liability can therefore only be imposed upon them if they interfered with the plaintiff's access to medical care. There is no evidence that this is the case. Indeed, the

plaintiff's entire complaint insofar as it concerns medical care is that various (unnamed) individuals have failed to diagnose and treat his longstanding medical problems. (See, e.g., Complaint, ¶¶ 13, 16 & 55.) It is undisputed that these diagnosis and treatment decisions are outside the responsibility (and competence) of the individual defendants.

Likewise, the plaintiff may not hold defendants Armstrong and Rodriguez responsible for his medical treatment simply because of their supervisory capacity. The doctrine of respondeat superior is not applicable to § 1983 cases. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 692-95 (1978).

### C.     The Plaintiff Has Failed to Exhaust Administrative Remedies With Respect to Any Action Seeking Injunctive Relief

In his prayer for relief, the plaintiff seeks injunctive relief against the State compelling the State to properly "treat" and "evaluate" his medical condition. (Complaint, p. 8.) Although the plaintiff is not barred by the eleventh amendment for any claim of injunctive relief, he must still exhaust his grievance rights to proceed in federal court. The plaintiff has not filed any medical grievances since his incarceration in Willard-Cybulski in June 2004.

### D.     The State is not Showing Deliberate Indifference to The Plaintiff's Current Medical Needs

Even if the plaintiff could prove that he exhausted his administrative remedies concerning his current medical treatment, he cannot establish that the State is deliberately indifferent to his medical needs. The plaintiff has not even plead facts from which one could infer deliberate indifference to his medical needs. For example, the plaintiff explicitly states with respect to his medical condition that he suffers from ailments "which the Defendants have

failed and neglected to diagnose properly." (Complaint, ¶ 13.) He asserts that he is being "necessary medication." (Id., ¶ 54.) He also claims that he has not received any outside medical evaluation. (Id., ¶ 56.) Such allegations fall short of that needed to prove that the state is disregarding a known, serious medical problem.

## V.     THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

The plaintiff has also brought suit with respect to the Americans with Disabilities Act and the Rehabilitation Act, asserting that the defendants failed to accommodate his alleged disability in violation of these two statutes. This claim is deficient for two reasons. First, with respect to the action against the individual defendants, they are immune from suit. With respect to any action against the State, the plaintiff has failed to exhaust his administrative remedies.

### A.     The Plaintiff has Failed to Exhaust his Administrative Remedies With Respect to Claims Brought Under the Americans with Disabilities Act and the Rehabilitation Act

Administrative Directive 9.6 explicitly states that inmates must exhaust the grievance procedure with respect to claims brought concerning "access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein." The plaintiff did not file a grievance concerning his ADA and Rehabilitation Act claims and he may not proceed on this matter in federal court.

B.     **The Defendants are Immune From Suit in Their Individual Capacities**

The plaintiff brought his ADA and Rehabilitation Act claim against eight defendants in their individual capacities.  The law is established in this circuit that state officials may not be sued in their individual capacity for violations of the ADA.  Garcia v. S.U.N.Y. Health Services Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001).  The same is true of the Rehabilitation Act, which is interpreted more narrowly than the ADA.  Id; see also Powell v. National Board of Medical Examiners, 364 F.3d 79, 85-86 (2d Cir. 2004).

VI.    **CONCLUSION**

For the reasons set forth above, the defendants respectfully urge that their motion for summary judgment be granted.

<div style="margin-left:40%">

DEFENDANTS,
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:__/s/_____
     Neil Parille
     Assistant Attorney General
     Fed. Bar No. 15278
     110 Sherman Street
     Hartford, CT  06105
     Telephone No.:  (860) 808-5450
     Fax No. (860) 808-5591
     E-mail:  neil.parille@po.state.ct.us

</div>

11

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 24th day of September, 2004 to

Richard Roque, Inmate No. 202380
Willard-Cybulski Correctional Institution
391 Shaker Road
Enfield, CT 06082

Kenneth Speyer, Esq.
Inmates' Legal Assistance Program
78 Oak Street, PO Box 260237
Hartford, CT  06126

___/s/_____
Neil Parille
Assistant Attorney General